Slip Op. 12 - 157

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES,<br><br>      Plaintiff,<br><br>      v.<br><br>ALEJANDRO SANTOS, CHB,<br><br>      Defendant. | Before: Donald C. Pogue,<br>           Chief Judge<br><br>Court No. 11-00436 |

**OPINION**

[granting motion for default judgment]

Dated: December 21, 2012

     Karen V. Goff, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY. With her on the brief were Stuart F. Delery, Acting Assistant Attorney General, and Barbara S. Williams, Attorney in Charge, International Trade Field Office.

     **Pogue, Chief Judge**: This is an action by United States Customs and Border Protection ("Customs") to recover civil penalties from a customs broker, Mr. Alejandro Santos ("Santos"), for violating Customs' regulations. Customs' Motion for Default Judgment, ECF No. 10, filed pursuant to USCIT R. 55(b), is currently before the court. Because the Clerk has entered default against Santos, Order, May 8, 2012, ECF No. 9, and Customs' Complaint, ECF No. 3, establishes a right to relief, sufficient facts to support that right, and sufficient facts to support the requested relief, Customs' motion will be

granted, and judgment will be entered against Santos in the amount of $19,000.

The court has jurisdiction pursuant to Section 641(d)(2)(A) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1641(d)(2)(A) (2006)[1] and 28 U.S.C. § 1582(1) (2006).

## BACKGROUND

Customs' Complaint contains four counts, each relating to one of the four penalties imposed against Santos. Customs alleges that it imposed the penalties following three separate reviews of entries of merchandise by Santos at the Port of Laredo, TX. Because Santos did not plead or otherwise respond to Customs' Complaint, the following factual allegations are taken as true. USCIT R. 8(c)(6).

First, on January 15, 2009, Customs Import Specialists visited Santos' place of business to conduct a review of entries. Compl. ¶ 6. During the review, the Import Specialists discovered that Santos had billed certain entries (BTN-0000501-4, BTN-0000730-9, BTN-0000742-4, BTN-0002238-1, BTN-0003018-6, and BTN-0000165-8) to a freight forwarder, Salvador Pedraza d/b/a SPR International ("SPR"), rather than the importer of

---

[1] All further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2006 edition.

record or ultimate consignee, without transmitting a copy of the bill to the importer of record or obtaining a waiver from the importer. Id. ¶¶ 6-9; Ex. A to Compl. Based on these findings, Customs issued penalty number 2010-2304-3-00004-01, in the amount of $5000. Compl. ¶ 11; Ex. D to Compl. This penalty is the subject of Count I.

During the same visit, the Import Specialists requested a copy of the power of attorney associated with entry BTN-00001658. Compl. ¶¶ 15-17. The requested power of attorney was not in Santos' records; instead, it was faxed to Santos' office upon the Import Specialists' request. Id. ¶ 20. The power of attorney faxed to Santos' office was dated February 15, 2007, Id. ¶ 18, which was subsequent to the importation of the entry on November 10, 2006, Id. ¶ 16; furthermore, the document did not identify Santos as the holder of power of attorney, Id. ¶ 18-19; Ex. E to Compl. Based on these findings, Customs issued penalty number 2010-2304-3-00005-01, in the amount of $5000. Compl. ¶ 23; Ex. H to Compl.[2] This penalty is the subject of Count II.

---

[2] In the Complaint, Customs alleged a $4000 penalty under Count II, Compl. ¶ 23; however, this appears to have been a typo, as the penalty notice referenced in Count II was for $5000. See Pl.'s Mot. Entry Default J. at 14 n.3; Ex. H to Compl. Because the court determines the amount of the penalty de novo, see discussion infra under Standard of Review, it is

(footnote continued)

Court No. 11-00436                                                    Page 4

Second, on September 4, 2008, Santos presented four entry summaries, Customs Form CF 7501 ("CF 7501"), to Customs for entry numbers BTN-00040011, BTN-00040029, BTN-00040037, and BTN-00040045. Compl. ¶ 28. The entry summaries classified the merchandise as "vegetable hair" under Harmonized Tariff Schedule of the United States ("HTSUS") subheading 1409.90.10. Id. ¶ 28; Ex. A to Mot. Default J. (entry summaries attached as Ex. 1). The entered merchandise, however, was corn husks, which Customs asserts are separately classified under HTSUS subheading 1404.90.90. Compl. ¶ 28. Based on these findings, Customs issued penalty number 2010-2304-3-00003-01, in the amount of $4000. Id. ¶ 31; Ex. K to Compl. This penalty is the subject of Count III.

Third, on April 15, 2009, Santos filed entry BTN-00052032, indicating that the entry contained "U.S. goods returned." Compl. ¶ 35. An April 17, 2009, inspection of the entry revealed that the merchandise was not entirely U.S. Goods Returned. Id. ¶ 36. After receiving notification from Customs, Santos acknowledged the discrepancy and indicated that the entry included goods originating in Great Britain; however, Santos never corrected the CF 7501. Id. ¶¶ 37-39; Exs. L, M to Compl.

---

within the courts' authority to correct this error in the Complaint.

Based on these findings, Customs issued penalty number 2010-2304-3-00180-01, in the amount of $5000. Compl. ¶ 43; Ex. P to Compl. This penalty is the subject of Count IV.

For each penalty, Customs issued a pre-penalty notice, penalty notice, and final demand for payment; Santos failed to respond to any of Customs' penalty notices or demands, and the penalties remain unpaid. Compl. ¶¶ 11-12, 23-24, 31-32, 43-44; Ex. B to Mot. Default J. ¶¶ 11-18. To remedy Santos' non-payment, Customs, on November 9, 2011, commenced suit in this court by filing the Summons and Complaint. On January 12, 2012, Commerce filed proof of service. Proof of Service, ECF No. 4. Santos did not respond to the Complaint, and upon motion for entry of default, the Clerk of the Court entered default on May 8, 2012. Order, May 8, 2012, ECF No. 9. Customs subsequently filed its Motion for Default Judgment, and Santos has not responded to the Motion.

## STANDARD OF REVIEW

A case brought pursuant to 28 U.S.C. § 1582(1) is reviewed *de novo*. 28 U.S.C. § 2640(a)(6) (providing that in cases commenced under 28 U.S.C. § 1582, "[t]he Court of International Trade shall make its determinations upon the basis of the record made before the court"); United States v. UPS Customhouse Brokerage, __ CIT __, 686 F. Supp. 2d 1337, 1364

(2010) ("UPS Customhouse Brokerage II") (interpreting "determination upon the basis of the record made before the court" to require trial *de novo*).[3] Specifically, to decide a penalty enforcement action under § 1582(1), the court must consider both whether the penalty has a sufficient basis in law and fact and whether Customs provided all process required by statute and regulations. UPS Customhouse Brokerage II, __ CIT at __, 686 F. Supp. 2d at 1346. No distinction is drawn in § 2640(a) between determination of the penalty claim and the penalty amount; therefore, pursuant to 28 U.S.C. § 2640(a), the

---

[3] United States v. Ricci, 21 CIT 1145, 985 F. Supp. 125 (1997), interpreted 28 U.S.C. § 2640(a) as providing only a scope and not a standard of review. Ricci, 21 CIT at 1146, 985 F. Supp. at 126. Therefore, the Ricci court looked to the Administrative Procedure Act for the standard of review and determined that 5 U.S.C. § 706(F) applied, making the standard of review *de novo*. Ricci, 21 CIT at 1146, 985 F. Supp. at 126-27. Nonetheless, because § 2640(a)

> describes the manner in which the Court "shall make its determinations" — or, in other words, settle or decide the case in the first instance — the statutory language "upon the basis of the record made before the court" appears to contemplate *de novo* review by the court and constitute a standard of review.

UPS Customhouse Brokerage II, __ CIT at __, 686 F. Supp. 2d at 1363 (quoting 19 U.S.C. § 2640(a)) (additional quotation marks and citations omitted); see also id. (reasoning, furthermore, that the Supreme Court has interpreted "upon the basis of the record made before the court" to mandate *de novo* review and that § 2640(a) governs other actions where the court conducts a trial *de novo*, including, *inter alia*, civil actions to contest the denial of a protest under 19 U.S.C. § 1515).

court considers both the claim for a penalty and the amount of the penalty *de novo*. See Ricci, 21 CIT at 1146, 985 F. Supp. at 127.

A defendant's default admits all factual allegations in the complaint, USCIT R. 8(c)(6), but it does not admit legal claims, see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (reasoning, in the context of a motion to dismiss for failure to state a claim, that when a court accepts factual allegations as true, it does not, therefore, accept legal conclusions as true).[4] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In addition, in the case of a default judgment, the court may look beyond the

---

[4] Because a court may grant a motion to dismiss *sua sponte* when a complaint is insufficiently pled, the court will not grant default judgment on the basis of a complaint that is insufficiently pled. This is the rule in the majority of circuits. See Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1069 (11th Cir. 2007); Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir. 2006); Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998); Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997); Thomas v. Scully, 943 F.2d 259, 260 (2d Cir. 1991); Martin-Trigona v. Stewart, 691 F.2d 856, 858 (8th Cir. 1982); Dodd v. Spokane Cnty., Wash., 393 F.2d 330, 334 (9th Cir. 1968); see also Gooden v. City of Memphis Police Dept., 29 F. App'x 350, 352-53 (6th Cir. 2002); but cf. Neitzke v. Williams, 490 U.S. 319, 329 n.8 (1989) ("We have no occasion to pass judgment, however, on the permissible scope, if any, of *sua sponte* dismissals under Rule 12(b)(6).").

complaint if necessary to "determine the amount of damages or other relief" or "establish the truth of an allegation by evidence." See USCIT R. 55(b); United States v. Inner Beauty Int'l (USA) Ltd., Slip Op. 11-148, 2011 WL 6009239, at *2 (CIT Dec. 2, 2011).

## DISCUSSION

Pursuant to 19 U.S.C. § 1641(d)(1)(C), Customs may "impose a monetary penalty . . . if it is shown that the broker . . . has violated any provision of any law enforced by the Customs Service or the rules or regulations issued under any such provision."[5] As noted above, Customs' Complaint contains four counts, each alleging that Customs has not received payment of a monetary penalty lawfully imposed against Santos pursuant to 19 U.S.C. § 1641(d)(1)(C) for violation of applicable regulations and following the procedures required by 19 U.S.C. § 1641(d)(2)(A). The court will address each count in turn.

### I. Count I

Count I alleges that Santos violated 19 C.F.R. § 111.36 when he conducted business with a freight forwarder, SPR, without forwarding a copy of his bill to the importer of

---

[5] The procedure for imposing a monetary penalty pursuant to § 1641(d)(1)(C), and the basis for the court's jurisdiction, is provided by 19 U.S.C. § 1641(d)(2)(A).

record. Compl. ¶¶ 6-10. A broker employed by an unlicensed person, such as a freight forwarder, is required to transmit a copy of the bill or entry to the importer of record "unless the merchandise was purchased on a delivered duty-paid basis or unless the importer has in writing waived transmittal of the copy of the entry or bill for services rendered." 19 C.F.R. § 111.36(a) (2006). Customs alleges that Santos failed to copy the importer of record for entries billed to SPR. Compl. ¶¶ 8-9. Customs supports these allegations with copies of the brokerage receipts for the entries in question. Ex. A to Compl. The receipts show that Santos billed SPR, but they do not indicate that the importer was notified of the transaction as required by § 111.36(a). Ex. A to Compl. Taking these facts as true, Santos violated 19 C.F.R. § 111.36 by failing to notify the importer of record when doing business with an unlicensed person.

II. Count II

Count II alleges that Santos violated 19 C.F.R. § 141.46 by conducting Customs business without a valid power of attorney. Compl. ¶¶ 17-22. "Before transacting Customs business in the name of his principal, a customhouse broker is required to obtain a valid power of attorney to do so. . . . Customhouse brokers shall retain powers of attorney with their books and papers, and make them available to representatives of [Customs] . . . ." 19 C.F.R. § 141.46 (2006). Customs alleges that when

requested by the Customs Import Specialist, Santos could not produce the power of attorney for entry BTN-00001658; instead a power of attorney was faxed to Santos, but this power of attorney was dated after the entry of merchandise and did not identify Santos as the holder of power of attorney. Compl. ¶¶ 16-20; Ex. E to Compl.  Taking these facts as true, Santos violated 19 C.F.R. § 141.46 by conducting business without a valid power of attorney for entry BTN-00001658.

III. Count III

Count III alleges that Santos violated 19 C.F.R. §§ 152.11 and 141.90 by misclassifying merchandise. Compl. ¶¶ 28-30.  "Merchandise shall be classified in accordance with the [HTSUS] . . . ." 19 C.F.R. § 152.11 (2008).  Furthermore, it is the responsibility of the importer or the customs broker to include the proper classification on the invoice. Id. § 141.90(b).[6]  Customs alleges that Santos incorrectly classified four entries of corn husks under HTSUS subheading 1404.90.10,

---

[6] The subject entries were entered in 2008. Compl. ¶ 28. At that time, § 141.90(b) only referenced importers and not customs brokers. Compare 19 C.F.R. § 141.90(b) (2008), with 19 C.F.R. § 141.90(b) (2010).  Because application of the 2008 regulation to a customs broker is not contested in this case and because the court defers to an agency's interpretation of its own regulation, United States v. UPS Customhouse Brokerage, Inc., 575 F.3d 1376, 1382 (Fed. Cir. 2009) ("UPS Customhouse Brokerage I"), the court will not overrule the penalty.

the subheading for vegetable hair, whereas corn husks are properly classified under HTSUS subheading 1404.90.90. Compl. ¶ 28. Customs further alleges that Santos misclassified the entries after prior advice from Customs regarding the proper classification of corn husks. Ex. A to Mot. Default J. ¶ 3. Taking these facts as true, Santos misclassified the entries in question, in violation of 19 C.F.R. §§ 152.11 and 141.90.[7]

### IV. Count IV

Count IV alleges that Santos violated 19 C.F.R. §§ 111.28, 111.29, 141.90, 142.6, and 152.11. Compl. ¶¶ 35-42. These allegations relate to entry BTN-00052032, which Santos entered as "U.S. goods returned"; however, subsequent inspection revealed that not all of the entered merchandise was U.S. goods returned. See id. ¶¶ 35-36. Furthermore, Santos acknowledged

---

[7] While the court accepts the alleged facts as true, it does not accept Customs' interpretation of the tariff classification, which is a question of law. Universal Elecs. Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997) ("[T]he proper meaning of the tariff provisions at hand . . . is a question of law, which we review de novo."). The question before the court, however, is not whether Customs should have classified the merchandise otherwise than it did; rather, the question is whether Customs properly imposed a penalty on Santos for failing to classify merchandise in accordance with what he knew to be the correct HTSUS subheading. That Santos was previously advised on the classification of corn husks and failed to classify the entries at issue in accordance with that advice is sufficient for the court to uphold the penalty. Therefore, the court need not and does not address the proper interpretation of the relevant HTSUS subheadings.

that some of the goods originated from Great Britain but never corrected the CF 7501. See id. ¶¶ 37-39; Ex. L to Compl. Customs claims under Count IV fall into three categories.

First, Customs alleges that Santos failed to properly classify merchandise. Compl. ¶ 42. As noted above, 19 C.F.R. §§ 152.11 and 141.90 require a customs broker to properly classify goods in accordance with the HTSUS. Furthermore, the commercial invoice or other documentation submitted with the entry shall include, *inter alia*, "[a]n adequate description of the merchandise [and] . . . [t]he appropriate eight-digit subheading from the [HTSUS]." 19 C.F.R. § 142.6 (2009). Accordingly, Customs alleges that Santos misclassified goods originating from Great Britain under HTSUS subheading 9801.00.10 (U.S. goods returned). See Compl. ¶¶ 36-37. Taking these facts as true, Santos improperly classified goods originating from Great Britain as U.S. goods returned, in violation of 19 C.F.R. §§ 141.90, 142.6, and 152.11.

Second, Customs alleges that Santos failed to exercise due diligence. Compl. ¶ 40. A customs broker "must exercise due diligence in making financial settlements, in answering correspondence, and in preparing or assisting in the preparation and filing of records relating to any customs business matter handled by him as a broker." 19 C.F.R. § 111.29 (2009). Customs alleges that Santos failed to correct the misclassification on

the CF 7501 entry summary and failed to pay the merchandise processing fee, as well as any duty that would have been assessed on properly entered goods. Compl. ¶ 40; Ex. N to Compl. Taking these facts as true, Santos violated 19 C.F.R. § 111.29 by failing to exercise due diligence to correct a record filed with Customs and failing to pay money due to Customs.

Finally, Customs alleges that Santos failed to exercise responsible supervision and control. Compl. ¶ 41. A customs broker "must exercise responsible supervision and control . . . over the transaction of the customs business . . . ." 19 C.F.R. § 111.28(a) (2009). Responsible supervision and control is defined as "that degree of supervision and control necessary to ensure the proper transaction of the customs business of a broker, including actions necessary to ensure that an employee of a broker provides substantially the same quality of service in handling customs transactions that the broker is required to provide." Id. § 111.1 (listing ten factors for consideration). As discussed above, Customs alleges that Santos failed to correct an acknowledged misclassification filed with Customs. Compl. ¶ 41; Ex. L. to Compl. Taking these facts as true, Santos failed to exercise reasonable supervision

and control pursuant to 19 C.F.R. § 111.28 by failing to ensure that the misclassification was corrected.[8]

## V. Amount of Penalty

Customs imposed a $5,000 penalty for the collective violations under Count I, Compl. ¶ 11; Ex. D to Compl.; a $5,000 penalty for the violation under Count II, Compl. ¶ 23; Ex. H to Compl.[9]; a $4,000 penalty for the collective violations under Count III, Compl. ¶ 31; Ex. K to Compl.; and a $1,000 penalty for each of the five violations under Count IV, Compl. ¶ 43; Ex. P to Compl. In total, Customs imposed penalties against Santos in the amount of $19,000.

---

[8] In order to assess a penalty pursuant to 19 C.F.R. § 111.28, Customs must consider all ten factors listed in the definition of reasonable supervision and control at 19 C.F.R. § 111.1. UPS Customhouse Brokerage I, 575 F.3d at 1383. Here, Customs has provided evidence that the Import Specialist who recommended the penalty considered all ten factors. See Ex. A to Mot. for Default J. ¶¶ 12-22.
   The court in UPS Customhouse Brokerage II held that the appropriate Customs officer to consider the ten factors is the Fines, Penalties, and Forfeiture Officer ("FP&F Officer") for the relevant port, because it is the FP&F Officer that issues the pre-penalty notice and considers any response from the broker before issuing the penalty. UPS Customhouse Brokerage II, __ CIT at __, 686 F. Supp. 2d at 1348. In this case, Customs provided evidence that the Import Specialist, not the FP&F Officer, considered the ten § 111.1 factors. Because Santos did not challenge the penalties before Customs, the court finds no reason to require that Customs show that the FP&F Officer re-analyzed the ten § 111.1 factors rather than accepted the Import Specialist's analysis.

[9] There is discrepancy between the amount claimed in the Complaint and the penalty imposed. See supra note 2.

The statute does not provide penalty guidelines for penalties imposed pursuant to 19 U.S.C. § 1641(d)(1)(C), except that such penalties should not "exceed $30,000 in total for a violation or violations of this section." 19 U.S.C. § 1641(d)(2)(A). Within this limit, the amount of a § 1641(d)(1)(C) penalty is left to Customs' discretion. While the court reviews the amount of penalty *de novo*, see 28 U.S.C. § 2640(a)(5); Ricci, 21 CIT at 1146, 985 F. Supp. at 127, where Customs' determination of the appropriate penalty amount is unchallenged, as it is here, the determination will be upheld so long as it is reasonable and supported by the facts. See United States v. NJC Int'l, Inc., Slip Op. 12-148, 2012 WL 6062562, at *1 (CIT Dec. 6, 2012).

In this case, Customs imposed penalties for violations of multiple Customs regulations relating to twelve entries of merchandise. Some of the violations are ones for which Santos had previously received sanction or warning from Customs. Ex. A to Mot. Default J. ¶¶ 3, 14 (noting that previous entries of corn husks entered by Santos were rejected for misclassification; Santos had attended broker compliance meetings regarding proper classification of corn husks and U.S. goods returned; that Santos was issued a prior penalty for improperly associating with a freight forwarder, and Santos violated the power of attorney regulation on three prior

occasions). Furthermore, the $19,000 penalty is well below the statutory maximum of $30,000. 19 U.S.C. § 1641(d)(2)(A). Finally, Customs provided Santos with a pre-penalty notice and opportunity to challenge the penalty in each case, see id., but Santos did not respond. See Compl. ¶¶ 11, 23, 31, 43; Exs. B, C, F, G, I, J, N, O to Compl. On these grounds, the court finds the penalty award reasonable and supported by the facts.

## CONCLUSION

Consistent with the foregoing opinion, Customs' Motion for Default Judgment is granted and the amount of penalty imposed by Customs is upheld on all counts; therefore, the court finds that a penalty in the amount of $19,000 is warranted.

Judgment will issue accordingly.

                                        /s/ Donald C. Pogue
                                        Donald C. Pogue, Chief Judge

Dated: December 21, 2012
       New York, NY

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>    v.<br><br>ALEJANDRO SANTOS, CHB,<br><br>    Defendant. | Before: Donald C. Pogue,<br>        Chief Judge<br><br>Court No. 11-00436 |

## JUDGMENT

Whereas, the Clerk of the Court entered default against Defendant, Alejandro Santos, CHB, on May 8, 2012, Order, ECF No. 9; and,

Whereas, the Plaintiff has moved for default judgment; and

Whereas, after reviewing all pleadings and papers on file herein, good cause appears therefore; it is hereby

ORDERED, ADJUDGED, and DECREED that Plaintiff's motion is granted; and it is further hereby

ORDERED that judgment is entered against Defendant in the amount of $19,000.

                                                /s/ Donald C. Pogue
                                        Donald C. Pogue, Chief Judge

Dated: December 21, 2012
      New York, NY

## NOTICE OF ENTRY AND SERVICE

    This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

    Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

    Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: December 21, 2012       By: /s/ Rebecca Demb
                                  Deputy Clerk